1  CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
       Kenneth M. Fitzgerald, Esq. (SBN: 142505)
2      kfitzgerald@cfsblaw.com
       Douglas J. Brown, Esq. (SBN: 248673)
3      dbrown@cfsblaw.com
4  550 West "C" Street, Suite 2000
   San Diego, California  92101
5  Tel:   (619) 241-4810
   Fax:  (619) 955-5318
6
   Attorneys for Plaintiff
7  InnovaSystems International, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INNOVASYSTEMS INTERNATIONAL, a California limited liability company,<br><br>                    Plaintiff,<br>       v.<br><br>GLENN PIPER, an individual, and DAVID ARMGA, an individual, ARMGASYS, INC., an Idaho corporation, ARMGA CONSULTING, LLC, an Idaho limited liability company,<br><br>                    Defendants. | Case No.:  **'12CV1239 W    BGS**<br><br>**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, TRADE LIBEL, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, UNFAIR BUSINESS PRACTICES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, INNOVASYSTEMS INTERNATIONAL, ("INNOVA"), for its Complaint against defendants GLENN PIPER ("PIPER") and DAVID ARMGA ("ARMGA"), ARMAGASYS, INC. and ARMGA CONSULTING, LLC, alleges as follows:

- 1 -

PLAINTIFF INNOVASYSTEMS INTERNATIONAL, LLC'S COMPLAINT

**THE PARTIES**

1. INNOVA is a limited liability company, organized and existing under the laws of the State of California, with its principal place of business in San Diego, California. INNOVA is in the business of providing leading edge information and technology solutions, including software application development, engineering and consulting services for the federal government, and in particular, the Department of Defense. Virtually all of INNOVA's work is confidential, deemed "classified," requires security clearance, and involves matters of national security.

2. PIPER is an individual residing in Idaho. PIPER was formerly employed by INNOVA at one of its commercial facilities in Boise, Idaho. PIPER is a software engineer and developer.

3. ARMGA is an individual residing in Idaho. ARMGA was formerly employed by INNOVA at the same commercial facility in Boise, Idaho where Defendant PIPER also worked. ARMGA is a software engineer and developer and served INNOVA as a project lead and manager.

4. ARMGASYS, INC. ("ARMGASYS") is an Idaho corporation, with its principal place of business in Meridien, Idaho. On information and belief, ARMGASYS was formerly known as Armga Integrated Systems, Inc., and was formed by ARMGA, during the time he was employed by INNOVA, for the purpose of competing against INNOVA, using INNOVA's trade secrets and confidential information. On information and belief, ARMGASYS is the alter ego of ARMGA insofar as it is inadequately capitalized, has no functional officers or directors, fails to observe corporate formalities, and has co-mingled assets with ARMGA. Justice and equity can only be accomplished, and fraud and unfairness can only be defeated, by piercing the corporate veil of ARMGASYS and disregarding its corporate form.

5. ARMGA CONSULTING, LLC ("ARMGA CONSULTING") is an Idaho limited liability company, with its principal place of business in Nampa, Idaho. On information and belief, ARMGA CONSULTING is the alter ego of ARMGA insofar as it is inadequately capitalized, has no functional officers or directors, fails to observe corporate formalities, and

1  has co-mingled assets with ARMGA. Justice and equity can only be accomplished, and fraud
2  and unfairness can only be defeated, by piercing the corporate veil of ARMGASYS and
3  disregarding its corporate form.
4      6.   In doing the things herein alleged, each defendant was acting as the agent,
5  servant, accomplice and co-conspirator of the other.

## JURISDICTION AND VENUE

7      7.   This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §
8  1332 because the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and
9  is a dispute between citizens of different states. Venue is proper under 28 U.S.C. § 1391(a).
10     8.   The contracts at issue between the parties were entered into in San Diego,
11 California. The contracts involved some performance by Defendants ARMGA and PIPER
12 outside of San Diego, but their contract performance activities were most often completed in
13 San Diego when these Defendants delivered the completed component parts of certain software
14 development activities to INNOVA at INNOVA's San Diego offices, for integration by
15 INNOVA into its other contract work for the Department of Defense, often for SPAWAR,
16 located in San Diego, California. In addition, the Employment Agreements entered by
17 Defendants ARMGA and PIPER are governed by California law, and the parties agreed that
18 disputes under those agreements would be resolved through arbitration in San Diego,
19 California, such that Defendants purposely availed themselves of the benefits of California law
20 and could reasonably foresee being subject to jurisdiction of courts in California. Therefore,
21 the Court has personal jurisdiction over defendants.

## FACTS

23     9.   In or about November, 2005, INNOVA hired ARMGA as a Senior Software
24 Engineer and Systems Analyst for its Idaho base of operations, acting as a group leader.
25 INNOVA conducts business operations for the Department of Defense for the United States
26 government at various locations designated by the Department of Defense. On November 1,
27 2005, INNOVA entered into a written Employment Agreement with ARMGA encompassing
28 the work ARMGA would perform for INNOVA, and the terms and conditions of that

- 3 -

1  employment. ARMGA executed the Employment Agreement.  A copy of the INNOVA-
2  ARMGA Employment Agreement is attached to this complaint as Exhibit A.
3      10.     In or about October 2006, INNOVA hired PIPER as a Software Engineer for its
4  Idaho based operations.  On October 10, 2006, as part of PIPER's employment at INNOVA,
5  the parties entered into a written Employment Agreement wherein PIPER contracted for and
6  agreed to work for INNOVA at INNOVA's commercial base of operations in Boise, Idaho.
7  PIPER executed the Employment Agreement.  A copy of the INNOVA-PIPER Employment
8  Agreement is attached to this Complaint as Exhibit B.
9      11.     According to each Employment Agreement, both ARMGA and PIPER agreed as
10  follows:

> "7. **LIMITATION ON OTHER ACTIVITY**
> During the term of this Agreement, EMPLOYEE shall not participate in other business or professional activities that may impinge or interfere, either directly or indirectly, with the full devotion and dedication of EMPLOYEE to the business of EMPLOYER. . . .  During the term of this Agreement and for a period of one year after termination of this Agreement, the EMPLOYEE agrees to refrain from soliciting or accepting offers of temporary or consulting employment with any Client introduced to the EMPLOYEE by the EMPLOYER without the prior written consent of InnovaSystems.  The EMPLOYEE agrees not to accept offers of temporary or consulting employment with any Client who the EMPLOYEE interviews with as a result of an interview arranged by EMPLOYER without the express written consent of InnovaSystems for the term of this Agreement and for a period of one year after the termination of this Agreement."

20      12.     As part of ARMGA and PIPER'S employment at INNOVA, each Defendant
21  was required to acknowledge reading and receiving INNOVA's Employee Policy Manual.  In
22  or about November 2005, ARMGA executed such an Acknowledgment, informing INNOVA
23  that he had acknowledged receiving a copy of the Employee Manual, and further
24  acknowledging that it was his responsibility to read the manual and to comply with its policies,
25  practices and rules of employment.  In or about October 2006, PIPER executed such an
26  Acknowledgement, also informing INNOVA that he had acknowledged receiving a copy of
27  the Employee Manual, and further acknowledging that it was his responsibility to read the
28  manual and to comply with its policies, practices and rules of employment.  A signed copy of

-4-

PLAINTIFF INNOVASYSTEMS INTERNATIONAL, LLC'S COMPLAINT

ARMGA's Acknowledgment of the Employee Policy Manual is attached hereto as Exhibit C. A signed copy of PIPER's Acknowledgment of the Employee Policy Manual is attached hereto as Exhibit D.  Under the terms of the company's Employee Policy Manual, there is an acknowledgment in Paragraph 4.12, entitled "Trade Secret Protection" that the company was the owner of all trade secrets developed by the employee during the performance of duties as an employee of INNOVA, that trade secrets included all of the company's confidential and proprietary information and that the company treated all of its trade secrets and proprietary information as confidential, to be protected from misuse.  A copy of the relevant portions of the INNOVA Employment Policy Manual is attached hereto as Exhibit E.

13. As a trusted manager, ARMGA was also required to take training courses regarding the highly sensitive and confidential nature of INNOVA's salary formulations and competitive labor rates.  In this training, which ARMGA acknowledged taking and understanding, it was emphasized that INNOVA's salary and billing rate information was "Company Confidential," and could not be disclosed or discussed outside of key directors and project managers with a need to know this information.  It was also emphasized that INNOVA's labor rates were its "key to competitive edge" and ARMGA was trained that salary and rate information was to be maintained in the strictest confidence.

14. Pursuant to ARMGA's and PIPER's employment with INNOVA, ARMGA and PIPER acknowledged that any and all client information obtained during his employment with INNOVA was confidential information that belonged to INNOVA, that ARMGA and/or PIPER would not disclose at any time during or after his employment with INNOVA.

15. In addition, due to the sensitive work performed by INNOVA for the Department of Defense and the highly confidential nature of that work, ARMGA and PIPER acknowledged that the disclosure of any confidential information would result in injury to INNOVA and injure its reputation and impair its ability to perform further work for the federal government and, in particular, the Department of Defense.

16. Accordingly, ARMGA and PIPER acknowledged that each would hold such information in confidence, during and after his employment with INNOVA, and not discuss,

communicate or transmit the information, except to further the interests of INNOVA. ARMGA and PIPER also agreed not to solicit INNOVA clients for 12 months following the termination of his employment.

17. The information to which ARMGA and PIPER had access was gathered over many years and contained confidential, nonpublic information about INNOVA, the Department of Defense, its systems, its strategic initiatives and its future plans and projects.

18. ARMGA and PIPER worked together at INNOVA on the same team, focusing on the same projects, working closely together on such projects on a daily basis. ARMGA served in a lead role, acting as a valued, trusted, team leader, frequently interfacing with INNOVA's customer, and by virtue of his trusted, lead capacity, gained unique access to many confidential aspects of INNOVA's relationship with its customer, including such critical information as the opportunity to bid for contracts with that customer, the value and pricing of work product, hourly rates, contract values, timelines for project completion, staffing of projects, unique customer needs, as well as the timing and funding of projects for INNOVA's customer. As part of ARMGA's status as a trusted leader, ARMGA was uniquely positioned to control INNOVA's relationship with its customer, and was knowledgeable about such confidential information as contract numbers, labor categories, labor hours distribution, company proprietary rates and overhead rates, the time of completion of projects, and the quality and security documentation and information of the actual work performed. As a lead manager responsible for preparing contract proposals, ARMGA had access to and used this confidential, trade secret information.

19. On or about January 21, 2011, ARMGA gave notice to INNOVA that he would be resigning at the end of the month. ARMGA resigned effective January 31, 2011. ARMGA informed INNOVA that he was going to return to teaching, which INNOVA later learned was false. ARMGA's departure came at a curiously critical time in INNOVA's work at its Idaho operations, in that the project that ARMGA was most integrally involved with was about to be the subject of a new contract between INNOVA and its customer. Before resigning and ending his employment, ARMGA permanently deleted all of the documents on his computer, and he

permanently deleted all of his Outlook emails, including all of his "deleted" and "sent" messages. INNOVA's subsequent computer forensic inspection revealed the reason why ARMGA took these highly unusual steps: he was destroying evidence of his unlawful behavior.

20. Through computer forensic investigation, INNOVA learned that two days before he announced his resignation, ARMGA accessed a number of highly confidential, proprietary documents containing sensitive cost estimates, project plans, and other contract information relating to INNOVA's pending contract award with its customer, as well as confidential TFS systems/data information, a process tracker tool, CNI system information, and FOM (Figure of Merit) processes and systems information. These secret project management, cost, pricing and technical documents constitute INNOVA's trade secrets, because they contain information not known to industry participants or the general public, which information gave INNOVA an economic advantage in its ability to win and renew its contracts, and because INNOVA takes reasonable measures to protect their secrecy. Armed with these documents or the information in them, a competitor could easily undercut INNOVA's pricing, and otherwise shape a competing bid to win INNOVA's business, using INNOVA's confidential information. The information in these documents was developed at considerable effort and expense by INNOVA, and ARMGA had no legitimate reason to access these documents, in light of his plan to quit his employment at INNOVA and work in a competing venture.

21. INNOVA also subsequently learned, after ARMGA departed his employ at INNOVA, that months prior to announcing his departure from the employ of INNOVA, ARMGA had started working on the side at a competing business in Boise, Idaho. Working on the side violated the terms of ARMGA's employment agreement with INNOVA. The name of that business enterprise was Armga Integrated Systems, Inc., a corporation formed September 8, 2010, nearly four months before ARMGA announced his resignation from INNOVA. INNOVA learned that while working as the lead project manager for INNOVA's Boise Idaho operations, ARMGA was actively involved with Armga Integrated Systems, Inc.,

and/or ARMGA CONSULTING, using INNOVA's confidential information that ARMGA accessed and acquired by virtue of his employment capacity at INNOVA, in order to improperly compete with INNOVA, to improperly solicit work from INNOVA's customer, and to undermine INNOVA's relationship with its customer, all for ARMGA's personal advantage.

22. ARMGA used INNOVA's confidential customer information and trade secrets both prior to and after his resignation to unlawfully compete with INNOVA, and to induce defendant PIPER to work with him in competition with INNOVA.

23. In March 2011, PIPER resigned from INNOVA, giving only three days' notice of his planned departure. He informed INNOVA that he was leaving to work with his wife in her candle selling business, which was false. When he was specifically asked whether he was going to work with ARMGA or for INNOVA's government customer, he replied, "None of your business."

24. Computer forensic investigation has revealed the real reasons for PIPER's abrupt departure, his misrepresentation concerning his future plans, and his refusal to disclose his real plans. That investigation shows that that shortly before announcing his resignation from INNOVA, PIPER accessed and downloaded a large volume of confidential INNOVA documents containing INNOVA's trade secrets. The volume of documents downloaded, and the types of documents downloaded, were unnecessary to any legitimate job performance requirements he had at INNOVA.

25. Before announcing his near-immediate resignation from INNOVA, PIPER was also communicating by email with ARMGA CONSULTING, to an email account of **glenn.piper@armgallc.com**, without any apparent legitimate justification for doing so. On information and belief, he did so in order to assist ARMGA and his companies in their unlawful schemes to compete unfairly against INNOVA, using INNOVA's trade secrets. PIPER, along with ARMGA, used electronic means to gain access to confidential trade secret content owned by INNOVA. On information and belief, using such improper means, they then forwarded, via email (including the use of an email address through Armga Integrated LLC) to

1  a personal computer and/or use of a removable media, various confidential trade secret

2  documents of INNOVA, all of which is information subject to written confidentiality

3  agreements between INNOVA, ARMGA and PIPER, and between INNOVA and its customer.

4      26.     The information that PIPER had access to and secretly took was confidential

5  trade secret information gathered over many years by INNOVA.  Such information included

6  confidential, nonpublic matter regarding INNOVA, the Department of Defense, the

7  Department of Defense initiatives, and related matters.

8      27.     The information and documents that ARMGA and PIPER unlawfully accessed

9  and downloaded were subject to reasonable efforts by INNOVA to maintain their secrecy,

10 including, but not limited to restricting the use or dissemination of such documents through

11 INNOVA's employment agreements and policies, designating salary and labor billing rates as

12 confidential in salary sensitivity training sessions attended by ARMGA, maintaining access

13 codes and passwords to control individual access, designating certain of the material as

14 "classified" by the Department of Defense, while maintaining all electronic files in password

15 protected computers and databases.  Information is accessible to INNOVA employees in the

16 course of their duties for the Department of Defense, but those employees have been the

17 subject of background checks and have received classified security clearances to perform their

18 work, and complete their projects for which INNOVA has contracted with the Department of

19 Defense.

20     28.     Shortly after ARMGA's employment with INNOVA ended, and days before

21 PIPER's abrupt announcement of his departure, INNOVA was shocked to learn that its

22 contract had been awarded to another unnamed competitor.  At no time prior to this surprise

23 announcement was INNOVA ever informed that it was in jeopardy of losing its contract

24 renewal, nor was INNOVA even made aware that the contract was up for bid to other

25 competitors.  ARMGA had prepared INNOVA's renewal bid, but INNOVA later learned that

26 the unknown competitor who was awarded this contract was actually ARMGA

27 CONSULTING, or some other entity owned and operated by defendant ARMGA.  Since that

28 time, ARMGA CONSULTING and the remaining defendants have unfairly obtained other

contracts, using the confidential information and trade secrets belonging to INNOVA, in breach of the agreements executed by ARMGA and PIPER, and in violation of law.

## FIRST CLAIM FOR RELIEF
### (MISAPPROPRIATION OF TRADE SECRETS)

29. INNOVA hereby incorporates the allegations contained in Paragraph 1 through 28, above.

30. Through Defendants ARMGA and PIPER, Defendants had access to and used INNOVA's trade secrets without INNOVA's knowledge or permission, for the purpose of unlawfully competing against INNOVA.

31. Defendants' conduct constitutes the misappropriation of INNOVA's trade secrets in violation of the Uniform Trade Secrets Act. Cal. Civ. Code § 3426 *et seq*.

32. INNOVA took reasonable efforts to maintain the secrecy of its confidential customer information, including, but not limited to obtaining written promises from ARMGA and PIPER not to use or disclose INNOVA's confidential and trade secret customer information for anything other than the benefit of INNOVA, conducting sensitivity training about the confidential and competitive value of INNOVA's salary and labor rate information, and restricting access to confidential information and documents through passwords and access codes.

33. Defendants ARMGA and PIPER were obligated by the terms of their Employment Agreements and the Personnel Policy Manual to maintain the secrecy of INNOVA's trade secrets and confidential information, including customer information.

34. Further, the information that Defendants unlawfully took and used is available only on a need-to-know basis, and access was limited to Defendants ARMGA and PIPER by use of a password protected computer system, and its unlawful use by ARMGA and PIPER is in direct contravention of specific provisions of the INNOVA Employee Policy Manual, which ARMGA and PIPER previously acknowledged having read and understood.

35. As a proximate result of Defendants' unlawful actions, INNOVA has suffered damages, in an amount well in excess of $75,000.00.

36. INNOVA has been, and continues to be, irreparably harmed by Defendants' misappropriation and use of INNOVA's trade secrets and, pursuant to Cal. Civ. Code § 3426.2, is therefore entitled to injunctive relief permanently enjoining Defendants and anyone acting in concert with them from using or disclosing such information, and requiring defendants to return INNOVA's confidential and trade secret information to INNOVA.

37. Defendants' misappropriation of INNOVA's trade secrets has been willful, entitling INNOVA to an award of its attorneys' fees and costs under Cal. Civ. Code § 3426.4.

## SECOND CLAIM FOR RELIEF

### (BREACH OF FIDUCIARY DUTY)

38. INNOVA hereby incorporates the allegations contained in Paragraphs 1-37 above.

39. As employees and agents of INNOVA, ARMGA and PIPER each owed a duty of loyalty to their employer and principal, INNOVA.

40. As part of that duty of loyalty, ARMGA and PIPER owed INNOVA a duty not to compete with INNOVA during the term of their employment with INNOVA, or otherwise further the interests of competitors of INNOVA while they remained employed by INNOVA.

41. ARMGA and PIPER breached their duty of loyalty by misappropriating INNOVA's confidential information trade secrets, and by actively working to compete against INNOVA while employed by INNOVA. ARMGA and PIPER further breached their duty of loyalty by assisting ARMGASYS and ARGMA CONSULTING and operating a side business with them, while employed by INNOVA.

42. As a result of ARMGA and PIPER's breach of duty of loyalty, INNOVA has been injured in an amount in excess of $75,000.00.

## THIRD CLAIM FOR RELIEF

### (BREACH OF CONTRACT)

43. INNOVA hereby incorporates the allegations contained in Paragraphs 1-42 above.

44. ARMGA and PIPER agreed, as part of their employment, not to disclose or use

1  INNOVA's customer information after termination of their employment, and not to solicit
2  INNOVA's employees or clients during or after termination of their employment.
3      45.    While employed by INNOVA and thereafter, ARMGA and PIPER accessed,
4  used, copied and misappropriated INNOVA's confidential customer and project information,
5  and subsequently used that information on behalf of themselves for their own gain and profit.
6      46.    INNOVA fully performed its obligations under its Employment Agreements
7  with ARMGA and PIPER.
8      47.    ARMGA and PIPER materially breached their obligations to INNOVA, as
9  alleged above.
10     48.    As a proximate result of defendants' ARMGA and PIPER's breach, INNOVA
11 has suffered damages, in excess of $75,000.00.

## FOURTH CLAIM FOR RELIEF

### (TRADE LIBEL)

14     49.    INNOVA hereby incorporates the allegation of paragraphs 1 through 48 above.
15     50.    On information and belief, commencing in or about December 2010, defendants
16 ARMGA and PIPER, in concert with defendants ARMGASYS and ARMGA CONSULTING,
17 began a campaign of slandering INNOVA to INNOVA's customer, making false and
18 defamatory remarks to INNOVA's customer concerning INNOVA's ability to perform work
19 for its customer competently, cost effectively, timely, and efficiently.  Defendants ARMGA
20 and PIPER falsely asserted that INNOVA did not have the capability to meet customer
21 expectations as to the pricing of projects, that INNOVA did not have the manpower or ability
22 to meet the customer's expectations to complete certain projects in a timely manner, that
23 INNOVA did not have experienced staff available to handle future projects for the customer in
24 an efficient and cost effective manner, and that INNOVA had designed its project management
25 with unnecessary and inflated expense.
26     51.    These statements were false and defamatory.  These statements disparaged
27 INNOVA's professional competence and integrity.
28     52.    Each of the statements made by Defendants to INNOVA's customer was false,

1  and defendants knew each statement was false when made.

2  53.     As a proximate result of Defendants' false and defamatory statements,
3  INNOVA lost an expected contract award worth approximately $500,000 in revenue, and has
4  lost additional contract awards in 2011 and 2012 whose value would have been approximately
5  $500,000.  In addition to this lost revenue, INNOVA suffered a loss of reputation and goodwill
6  with its customer, the result of which has been to reduce INNOVA's revenues from contract
7  awards from that customer.

8  54.     In making the false and defamatory statements alleged herein, Defendants acted
9  with oppression, fraud and malice, warranting an award of punitive damages in an amount
10 sufficient to punish and make an example of them, and to deter such misconduct by others.

11                        **FIFTH CLAIM FOR RELIEF**
12                        **(INTENTIONAL INTERFERENCE WITH**
13                        **PROSPECTIVE ECONOMIC ADVANTAGE)**

14 55.     INNOVA hereby incorporates the allegations contained in Paragraph 1-54
15 above.

16 56.     INNOVA had an economic relationship with its clients, and Defendants had
17 knowledge of this relationship.

18 57.     INNOVA had a probability of future economic benefit as a result of its
19 relationship with its clients.  ARMGA and PIPER were privy to INNOVA'S communications
20 with its customer concerning future contract awards from the customer, and they knew that
21 INNOVA had a probability of future economic benefit through continued contract awards from
22 the customer.

23 58.     Defendants intentionally interfered with INNOVA's relationship with its
24 customer, using wrongful and unlawful means, including: misappropriating and using
25 INNOVA's trade secrets and confidential information; using INNOVA confidential
26 information in violation of the employment agreements and policies agreed to by ARMGA and
27 PIPER; making false and defamatory statements about INNOVA to INNOVA's customer;
28 operating a side business (whose purpose was to compete against INNOVA) while employed

by INNOVA, in violation of the employment agreements executed by ARMGA and PIPER; deliberately destroying evidence of ARMGA's improper activities while still employed at INNOVA; deliberately misrepresenting facts concerning their planned business activities to INNOVA when resigning their employment, in order to prevent INNOVA from discovering defendants' unlawful scheme and to prevent INNOVA from protecting its interests.

59. As a proximate result of Defendants' unlawful and improper acts of interference, INNOVA has been damaged in an amount in excess of $75,000.00.

60. Defendants' acts were willful, malicious and undertaken in knowing disregard of INNOVA's rights, entitling INNOVA to an award of punitive damages in an amount sufficient to punish and make an example of them and to deter such misconduct by others.

## SIXTH CLAIM FOR RELIEF
### (UNFAIR BUSINESS PRACTICES)

61. INNOVA hereby incorporates the allegations contained in Paragraph 1-60 above.

62. By engaging in the acts alleged herein, defendants engaged in unfair, unlawful and fraudulent acts, which constitute unfair business practices under the Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq*.

WHEREFORE, INNOVA prays for judgment against defendants as follows:

1. For compensatory damages according to proof;
2. For punitive damages;
3. For attorneys' fees and costs;
4. For a permanent injunction, prohibiting Defendants and any of Defendants' employees, agents and those acting in concert with them, from disclosing or using INNOVA's documents, confidential information, or trade secrets;
5. For a permanent injunction, prohibiting Defendants and any of Defendants' employees, agents and those acting in concert with them, from doing business with INNOVA's existing and prospective clients, for a period of one year;
6. For an accounting and disgorgement of all monies, profits and other benefits

obtained by defendants as a result of their wrongful conduct;

7. For a permanent injunction compelling Defendants to return to INNOVA any and all INNOVA documents, trade secrets and confidential information in Defendants' possession, custody or control;

8. For such other relief as the Court may deem just and proper.

DATED:  May 22, 2012                                        CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP


By: /s/ Kenneth M. Fitzgerald
    Kenneth M. Fitzgerald, Esq.
    Douglas J. Brown, Esq.
    Attorneys for Plaintiff
    InnovaSystems International, LLC

**Jury Demand**

Plaintiff hereby demands a trial by jury.

DATED: May 22, 2012                     CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP


                                          By: /s/ Kenneth M. Fitzgerald
                                                Kenneth M. Fitzgerald, Esq.
                                                Douglas J. Brown, Esq.
                                                Attorneys for Plaintiff
                                                InnovaSystems International, LLC

PLAINTIFF INNOVASYSTEMS INTERNATIONAL, LLC'S COMPLAINT

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
InnovaSystems International, LLC

## DEFENDANTS
Glenn Piper, an individual; David Armga, an individual;
[See Attachment]

**(b)** County of Residence of First Listed Plaintiff: **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Chapin Fitzgerald Sullivan & Bottini LLP
[See Attachment]

Attorneys (If Known)

**'12CV1239 W   BGS**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☒ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): **28 U.S.C. § 1332**
Brief description of cause: **Trade Secret Misappropriation**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 05/22/2012
SIGNATURE OF ATTORNEY OF RECORD: s/ Kenneth M. Fitzgerald

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

ATTACHMENT TO CIVIL COVER SHEET
Form JS 44

I. (c) Attorneys' Firm Name , Address and Telephone Number

CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
   Kenneth M. Fitzgerald, Esq. (SBN: 142505)
   kfitzgerald@cfsblaw.com
   Douglas J. Brown, Esq. (SBN: 248673)
   dbrown@cfsblaw.com
550 West "C" Street, Suite 2000
San Diego, California  92101
Tel:   (619) 241-4810
Fax:   (619) 955-5318

Attorneys for Plaintiff
InnovaSystems International, LLC


DEFENDANTS

Glenn Piper, an individual;
David Armga, an individual;
ArmgaSys, Inc., an Idaho corporation;
Armga Consulting, LLC, an Idaho limited liability company